### In re FONG CHEW CHUNG.

### No. 7194–M.

District Court, N. D. California, S. D.

May 22, 1944.

Reconsideration Denied Aug. 30. 1944.

Gus C. Ringole, of San Francisco, Cal., for petitioner.

ST. SURE, District Judge.

Petitioner, a Chinese alien, makes application for citizenship under provisions of the Nationality Act of 1940, 8 U.S.C.A. § 1001, which reads as follows:

" * * * Any person not a citizen, regardless of age, who has served or hereafter serves honorably in the military or naval forces of the United States during the present war and who, having been lawfully admitted to the United States * * * shall have been at the time of his enlistment or induction a resident thereof, may be naturalized upon compliance with all the requirements of the naturalization laws except that (1) no declaration of intention and no period of residence within the United States or any State shall be required; (2) the petition for naturalization may be filed in any court having naturalization jurisdiction regardless of the residence of the petitioner; (3) the petitioner shall not be required to speak the English language, sign his petition in his own handwriting, or meet any educational test; * * *."

This is a case of first impression, and is of considerable importance because its determination will affect a large number of future applications of a similar nature.

In Schneiderman v. United States, 320 U.S. 118, 63 S.Ct. 1333, 1335, 87 L.Ed. 1796, the Supreme Court said: "It is safe to assert that nowhere in the world today is the right of citizenship of greater worth to an individual than it is in this country. It would be difficult to exaggerate its value and importance. By many it is regarded as the highest hope of civilized men." The court held that the "priceless benefits" of citizenship once conferred upon an alien by judicial decree "should not be taken away without the clearest sort of justification and proof." Nor should this great privilege be lightly conferred.

Notwithstanding the law dispenses with an educational test in naturalization where applicants have served honorably in the armed forces during the present war, I will mention that the evidence shows that although petitioner has resided in this

country for seventeen years, and has been engaged in business in San Francisco as part owner in a Chinese grocery, he does not speak or read English and knows nothing about our form of Government. It was necessary to take his testimony through an interpreter.

Petitioner was inducted into the Army of the United States in December, 1942, and was given an honorable discharge in August, 1943. The following notation appears on his discharge: "Section VIII A. R. 615—360, not eligible for reenlistment or induction."

The pertinent provisions of Section VIII Army Regulations 615—360 read:

"Inaptness or Undesirable Habits or Traits of Character

"51a. Procedure * * * When an enlisted man—

"(1) Is inapt, or

"(2) Does not possess the required degree of adaptability for the military service after reasonable attempts have been made to reclassify and reassign such enlisted man in keeping with his abilities and qualifications, or

"(3) Gives evidence of habits or traits of character * * * which serve to render his retention in the service undesirable, and rehabilitation of such enlisted man is considered impossible after repeated attempts to accomplish same have failed, or

"(4) Is disqualified for service, physically or in character, through his own misconduct, and cannot be rehabilitated so as to render useful service before the expiration of his term of service without detriment to the morale and efficiency of his organization, his company or detachment commander will report the facts to the commanding officer."

"55.

"a. Except as otherwise prescribed in b below, the discharge from the Army of the United States (blue) will be given.

"b. An honorable discharge from the Army of the United States will be given when, according to the approved findings of the board of officers required by paragraph 51c, the conduct of the enlisted man during his current period of service has been such as would render his retention in the service desirable were it not for his inaptitude or lack of required adaptability for military service. In such cases the discharge certificate will show that reenlistment is not warranted."

It will be noted that in every case but one, where a discharge is given for causes specified in paragraph 51a, a blue or dishonorable discharge is given. The exception is made where no element of misconduct or moral turpitude appears.

The stated policy of the War Department in proceedings for discharge appears in paragraph 52a:

"No man will be separated from the service prior to the expiration of his term of service for any of the causes enumerated in paragraph 51a unless the Government can obtain no useful service from him by reason of his mental, moral, or physical disqualification once such man has been accepted for service as an enlisted man in the Army of the United States."

Petitioner contends that the fact that he received an honorable discharge brings him within the provisions of Section 1001. Section 1001 does not use the words "has been honorably discharged" but the words "has served * * * honorably." The question presented for decision is whether petitioner has "served honorably" within the contemplation of the statute.

"To serve" has been variously defined as "to render services so as to benefit, help, or promote; as, to serve one's country, mankind" (Webster's New International Dictionary); "to promote the interest of"; "contribute to the wellbeing of"; "aid by kind or useful offices"; "to be of use or service to"; "to employ oneself in the interest of another and in obedience to his directions." (Funk & Wagnalls New Standard Dictionary.) These definitions are particularly applicable to service in the armed forces. It was because of his inability to be of use or service to the Government that petitioner was discharged.

The bestowal of citizenship under Section 1001 is based upon and made a reward for useful service. If the Government could "obtain no useful service" from petitioner, how can it be said that he has "served honorably", or at all? His inaptitude was not something which developed during the period of enlistment. It had always existed, which fact the army, after repeated and reasonable attempts to make use of him, was forced to recognize. After induction it was found that petitioner was mentally disqualified to understand and perform any duties required of him.

In my opinion petitioner has not served honorably, or at all. He has failed to meet the requirements of the statute.

The petition will be denied.

On Petition for Reconsideration.

A further hearing was had in the above matter upon application for reconsideration. The petition is based on two grounds: First, that when the briefs were filed there was no definite issue of law then presented to which they could be directed; and second, that the point made in the court's opinion was not fully argued.

I think the only legal issue that could possibly be presented is whether petitioner "served honorably" within the meaning of Section 1001, 8 U.S.C.A. From the face of the record and a consideration thereof it appears to this court that he did not.

The second ground calls the attention of the court to the statement on petitioner's honorable discharge: "This certificate is awarded as a testimonial of Honest and Faithful Service to his country." I considered the effect of these words in making the decision. I concluded that when construed with petitioner's record while an enlisted man and the Army Regulation governing his discharge, these words are ineffective and not binding on the court so far as concerns the present proceeding. The very reason for the discharge as set forth in petitioner's army record negatives the idea that petitioner has served in any way within the contemplation of the statute. I am mindful of the fact that the army has issued to applicant a paper designated as an honorable discharge. It speaks for itself so far as applicant's separation from the army is concerned, but its language does not per se entitle the bearer to citizenship. Only the law can do that, and quite clearly the law is against the applicant. As I have endeavored to show in my opinion, I think that both the statute and the record show that applicant's petition for citizenship must be denied.

The principal argument of counsel for petitioner is that the court is bound by the action of the War Department in awarding an honorable discharge, and that such action is not subject to review, nor may it be set aside.

This court did not base its order on a claim of jurisdiction to usurp the power of the War Department, nor did it question the status of petitioner as the holder of an honorable discharge. If Section 1001 of Title 8 U.S.C.A. included in the designation of those entitled to citizenship the words "any person who has been honorably discharged," the court would have no alternative other than to admit petitioner.

It appears on the face of petitioner's discharge that it was awarded under the provisions of Section VIII of Army Regulations, 615—360. By examining the regulations referred to, the court was not questioning the action of the War Department but attempting to determine the circumstances under which the discharge was granted as shown by the reference on the discharge itself. It was found that an honorable discharge is granted under these regulations only when the Government can obtain no useful service from a soldier.

Although it may be unnecessary, but because of the importance of the case, I wish to say that I have no prejudice whatsoever against applicant because he is an alien Chinese; for upwards of half a century I have known and liked the Chinese as individuals and as a people. At the hearing I observed the petitioner on the witness stand. He appeared to me to be above the average in intelligence. He has been in the mercantile business in San Francisco for seventeen years.

I cannot escape the feeling that after his induction into the army petitioner found that he did not like it and resolved to get out, if possible. To accomplish such purpose, he shrouded himself in that imperturbable stolidity, easily recognized by Westerners who know Chinese, assumed an attitude of "Me no sabe," and there he stood as immovable as a rock. If I am correct in my conclusion in this regard, then, the petitioner practiced a fraud upon the Government and under no circumstances would he be entitled to citizenship. If on the other hand, petitioner is just plain dumb, and the "Government can obtain no useful service from him because of his mental * * * disqualification," he would not be entitled to the great gift of citizenship, as Congress never intended such an absurd consequence upon the adoption of the Nationality Act.

The petition will be denied.