**BANKERS TRUST CO. et al. v. CALLAWAY et al.**

No. 11144.

Circuit Court of Appeals, Fifth Circuit.

April 3, 1945.

Edward W. Bourne, of New York City, and Luther H. Zeigler, of Savannah, Ga., for appellant Bankers Trust Co., as trustee, etc.

Robert M. Becket of New York City, and William M. Fulcher, of Augusta, Ga., for appellant Chemical Bank & Trust Co., as trustee, etc.

James L. Homire, Chief Railroad Counsel, Reconstruction Finance Corporation, and Emmet McCaffery, Attorney, Reconstruction Finance Corporation, both of Washington, D. C., and Robert B. Troutman and William K. Meadow, both of Atlanta, Ga., for appellant Reconstruction Finance Corporation.

T. M. Cunningham, of Savannah, Ga., for appellee Merrel P. Callaway, as trustee, etc.

630

A. M. Lewis, of New York City, and J. Randolph Anderson, of Savannah, Ga., for appellee Central Hanover Bank & Trust Co., as trustee.

R. Basil Morris, of Savannah, Ga., for appellee Liberty National Bank & Trust Co. of Savannah, as trustee, etc.

J. F. Gillis and John P. Allee, both of New York City, and F. M. Oliver, of Savannah, Ga., for appellee Manufacturers Trust Co., as trustee, etc.

Before HUTCHESON, HOLMES, and McCORD, Circuit Judges.

HUTCHESON, Circuit Judge.

Questions as to respective mortgage lien[1] priorities[2] on lines of railway and branches acquired after November 1, 1895,

[1] These are the mortgages:

### 1. THE CONSOLIDATED MORTGAGE.

Executed and delivered on Nov. 1, 1895, to secure an. issue of $18,500,-000.00 of bonds, this mortgage conveyed lines and leasehold interests then owned and operated by the company, and "Also, all the right, title, estate, interest, property and franchises of the Railway Company, of, in and to any and all lines of railway and branches by it hereafter acquired, held, owned or leased, or in which it shall obtain and hold any interest, subject, nevertheless, to all conditions upon which any such property or interest shall be acquired, and to all provisions of this Indenture concerning property hereafter acquired, and, as to any portion of such after-acquired property, subject also to the obligations, if any, secured by any pledge or mortgage of such property subject to which it may be acquired by the party of the first part hereto."

Then followed in Section 7 of Article Two:

"But nothing expressed or implied in this Indenture is intended, nor shall it be construed, to limit the right or power of the Railway Company, hereinbefore reserved, by the use of its credit or means, to construct or acquire, either free from, or subject to encumbrance, other lines of railway, branches or extensions, or interests therein, and to assume or create liens, or leaseholds therein on all railroads hereafter acquired and not described herein superior and prior to the lien hereof."

### 2. THREE PREFERRED INCOME MORTGAGES.

Their interest payable only out of net earnings, the first was for $4,000,000.00; the second for $7,000,000.00; and the third for $4,000,000.00. Though they bore the same date as the Consolidated mortgage, they were declared to be subordinate to it. Each covered the same property, each contained . in its granting clause the same provision as to after acquired property, but being in' different and shorter form, none of them contained the long series of articles and clauses, including section 7, which it is claimed authorizes the displacement of the Consolidated mortgage and the reversal of the order of it and the Income mortgages.

### 3. THE REFUNDING AND GENERAL MORTGAGE.

Executed and delivered April 1, 1919, this mortgage, as to liens and leaseholds described as after acquired property, provided that the lien of the Consolidated mortgage was displaced in favor of its lien, recited. that all the railroads and leaseholds listed as after acquired property "have been acquired by the company since the execution and delivery of the Consolidated mortgage dated Nov. 1, 1895, and have from time to time, as acquired become subject to the lien of the Consolidated mortgage". It quoted the clause from section 7 of Article two of the Consolidated mortgage quoted hereinabove and then declared:

"Under and by virtue of the aforesaid provisions * * * the Railway Company has elected and declared, and does hereby elect and declare, for the benefit of the bonds secured hereby, that this indenture is and shall be a lien superior and prior to the lien of the said Consolidated Mortgage, upon all and singular the railroads and leaseholds with their appurtenances listed and described in the granting clauses hereof under said Parcels 3 and 4, and upon all property of every nature and kind which it shall hereafter acquire, and shall subject, or has by this indenture agreed to subject, to the lien hereof; so that this indenture shall be a lien on all such railroads, leaseholds and property in all respects superior and prior to the lien of every other mortgage thereon except (1) the income mortgages, * * *".

[2] These are the facts which determine the answer to the question:

(1) As originally issued on Nov. 1, 1895, Consolidated primed the Preference mortgages.

(2) After the execution of those mortgages the company during the period from Jan. 1, 1897, to Feb. 5, 1907, acquired or constructed the sections in dispute, and as each was acquired it came

having arisen in connection with a plan for the reorganization of the Central of Georgia Railway Co., the trustee in the debtor proceedings filed a petition to have them determined.

In reaching his conclusion as to the effect of the invoked clause,[3] the district judge, instead of reading it as a clause of reference to the after-acquired property granting clause, where alone the powers reserved to the railway were to be found, treated the clause as though it were itself a reservation clause, and to be read without reference to the granting clause, where the right or power of the railway company had been "hereinbefore reserved." So reading it, as detached from, disassociated with, and independent of the language of the after-acquired property granting clause to which it referred, the district judge found in it authority not only for the complete displacement of the Consolidated by the Refunding and General mortgage, but also for the postponement of Consolidated to the Preference Income mortgages. He, therefore, declared the priorities as follows: First, Preference Income; Second, Refunding and General; Third, Consolidated.

The trustee of the Consolidated mortgage is here complaining that in displacing that mortgage, and in reversing the order of the Consolidated and Income mortgages, the finding and decree produces a result contrary to what was plainly intended when the mortgages were written, and was plainly provided in them, and does violence to a reasonable common-sense construction of those provisions.

We agree. In Ecker v. Western Pacific R. Corporation, 318 U.S. 448, 63 S.Ct. 692, 716, 87 L.Ed. 892, a controversy, as here, between a later refunding and an earlier first mortgage, the Supreme Court construed a true reservation clause,[4] that is one which not referring to a reservation already made, itself made the reservation, as limited by and properly interpreted in the light of provisions in the granting clause. So construed, it was held to reserve not a general power of displacement or subordination under any circumstances

subject to such first or purchase money liens as were created or assumed in connection with its acquisition, under the liens of the Consolidated and the Income mortgages in that order. Long afterwards, the company, on October 1, 1912, executed its General and Refunding Mortgage, in which, using language substantially the same as that quoted above from the Refunding and General Mortgage of April 1, 1919, it undertook to displace the lien of the Consolidated mortgage, but not, however, of the income mortgages.

(3) On April 1, 1919, the General and Refunding mortgage was discharged and the company executed the Refunding and General mortgage described in the note above.

[3] "Under and by virtue of the aforesaid provisions * * *, the Railway Company has elected and declared, and does hereby elect and declare, for the benefit of the bonds secured hereby, that this indenture is and shall be a lien superior and prior to the lien of the said Consolidated Mortgage, upon all and singular the railroads and leaseholds with their appurtenances listed and described in the granting clauses hereof under said Parcels 3 and 4, and upon all property of every nature and kind which it shall hereafter acquire, and shall subject, or has by this indenture agreed to subject, to the lien hereof; so that this indenture shall be a lien on all such railroads,

leaseholds and property in all respects superior and prior to the lien of every other mortgage thereon except (1) the income mortgages, * * *".

[4] "But nothing express or implied in this indenture shall be construed to limit the right or power of the Company or any successor or purchasing corporation, which right and power is hereby expressly reserved, by the use of its credit or free funds or by the use of First Mortgage Bonds delivered to the Company or any successor or purchasing corporation as in this indenture provided to reimburse the Company or any such successor or purchasing corporation for expenditures theretofore actually made out of its free funds, to construct or acquire free from the lien hereof lines of railroad, extensions or branches or interests therein, equipment, stocks, bonds or other securities or other property, rights, franchises, immunities or privileges provided the same shall not be lines of railroad, extensions or branches or interests therein, equipment, stocks, bonds or other securities, or other property, rights, franchises, immunities or privileges (a) on account of the purchase, acquisition or construction whereof or work whereon First Mortgage Bonds shall be authenticated and delivered or their proceeds or their cash deposited hereunder shall be paid out as herein provided; * * *."

or at any time, but one limited to the situation contemplated and dealt with in the granting clause. Said the Supreme Court:

"It is argued that this reservation permits the acquisition of rolling stock entirely free from the lien of the First Mortgage, unless acquired, as was not the case here, by the use of proceeds of the first mortgage bonds.

"We do not so view the reservation. It rather performs the function of authorizing the acquisition of equipment by equipment trust or other method and only to that extent displacing the lien of the First Mortgage arising from the after-acquired property clauses. The granting clauses show a purpose to subject to the First Mortgage all the property and equipment used in connection with the road. There is repeated general mention of the grant of rolling stock, of legal and equitable interests. * * *

"It is urged that the words 'free from the lien hereof' in the reservation clause must be given their literal significance. The argument must fail aside from the difficulties, inherent in a suggestion that these words, shall be lifted from context and forcibly applied without reference to an intention fairly to be drawn from three specific clauses of the mortgage and reinforced by the entire scheme of the document. * * *

"The inconsistency of such a result suggests that the phrases 'free from the lien hereof' and 'superior to the lien of this indenture' are in a sense correlative and were merely suited to the different title situations in the two methods of financing."

For the much stronger reason that the so-called reservation clause here is not a reservation clause at all but merely refers back to reservations already made, the authority of the railway company to displace or subordinate the Consolidated mortgage must be sought not in the invoked clause of Section 7, but in the provisions of the granting clause dealing with after-acquired

property. When that clause is turned to and it is read in the light of the conditions surrounding the making of the mortgages, of the language of Section 6 of Article 2,[5] and of the language of the indenture as a whole, what rights and powers of displacement it was intended to reserve and did reserve to the railway company become quite clear. When the arrangements for refinancing represented by the mortgages of 1895 were made, it was contemplated that a program of extension and development would be entered upon in which additional railway properties would be acquired by construction or purchase. It was, therefore, provided in the two mortgages that in addition to the property already on hand, the grant of the mortgages should extend to and include all lines or railway and branches "hereafter acquired, held, owned or leased by the railway, or in which it should acquire any interest". It was understood that some of the properties would be acquired with funds, the proceeds of Consolidatd mortgage bonds, and, as was provided in the indenture in the Ecker case, it was provided in Section Six of this indenture that as to such properties, its lien would immediately attach as a first and prior lien.

■■ It was recognized, too, that in the process of acquisition, some of the after-acquired properties would, or might, be constructed or acquired under circumstances making it necessary for the company, in the course, and as a part, of their acquisition, to assume, take subject to, or grant, prior liens, and provision was made in the after-acquired property granting clause in both Consolidated and Income mortgages for these contingencies. It ought, therefore, to be manifest that the invoked clause of Section 7, expressly referring as it does to "the rights or powers. hereinabove reserved" was not intended to, it could not, be read as adding to these powers. Rather it was a restatement and resummation of the conditions under which properties would or might be after ac-

---

[5] "Sixth. That all lines of railway and property of every kind, and all interest therein, when and as and to the extent hereafter acquired, as above provided, out of, or from bonds or the proceeds of bonds secured by this Indenture, shall, without any further conveyance or assignment, immediately upon such acquisition become, and be subject to the lien of this Indenture as fully and completely as though now owned by the Rail-

way company, and expressly and specifically conveyed by, and embraced in, the granting clauses of this Indenture; and that at all times hereafter it will execute and deliver any and all such further assurances and conveyances as the Trustee may reasonably direct or require, for the purpose of expressly and specifically subjecting any and all such after-acquired roads or properties to the lien of this Indenture."

quired, and liens prior to the mortgages then being created would, or might, be assumed or created in the course, and as a part of their acquisition. So read, there is no inconsistency whatever between the statement of the powers conferred in the granting clause and their restatement in the invoked clause. So read, the difficulties legally and logically inherent in postponing the superior Consolidated mortgage to the inferior Income mortgages without the consent of the Consolidated disappear. Such a construction does not nullify any, it gives meaning and effect to all of, the language used. Limiting, as the Supreme Court did in the Ecker case, the words "construct or acquire either free from or subject to encumbrances * * * and to assume or create liens", etc., to what the parties to the mortgage had in mind, the creation of liens, the assumption of liens, the taking, subject to liens, of particular properties as a part of or in the course of their acquisition, both the granting clause and the section 7 clause live and have effect. So construed they have a reasonable and sensible meaning, giving effect to the purpose of the indenture to enable the company to acquire new lines without prejudice to either its freedom of operation or the real security of the mortgage. So construed, they avoid the startling result achieved here of displacing the Consolidated mortgage years after its creation in favor, not of a construction or acquisition mortgage on after-acquired lines, but of a general and refunding mortgage on all the property of the company, in an amount far greater than the amount of the Consolidated mortgage, and having no connection with and no relation to the acquisition of after-acquired lines. Read and construed, however, as it was below, to enlarge and extend the powers reserved in the granting clauses of both mortgages, to permit the railway company to completely displace and postpone the Consolidated mortgage, the so-called reservation clause is seen to confer truly remarkable powers. Effective as construed to completely displace the Consolidated mortgage in favor of the Refunding and General, it is seen to be also endowed with a peculiar and wondrous power, the power to effect a kind of strange and spectacular mortgage metempsychosis in the course of which by a complete reversal of the order of their priorities, and, contrary to the agreement of Consolidated and Income, the superior becomes the inferior, the inferior the superior. A metemphychosis, the enormity of which if the original $15,000,000 of income bonds were still outstanding, would be so stark as to compel if not the conclusion at which we have arrived, that the execution of the Refunding and General mortgage was without any effect on the mortgage priorities, at least one which would deny to its execution the effect attributed to it of putting the cart before the horse without the consent of either. Holding, as we do, that the company was without power to subordinate the Consolidated to either the Refunding and General or the Income mortgages, and that the execution of the Refunding and General mortgage was without effect on the order of priorities, it is perhaps unnecessary for us to say more. But we think we should say that if we could agree that the invoked clause gave the company power to create mortgages with a lien primary to that of Consolidated, we could not at all agree that such power would extend to postponing Consolidated to Income. The statement in the Refunding and General mortgage, that its mortgage is not superior to the Income mortgages, which the district judge relied on as in some way reversing the order of priorities as between Consolidated and Income, was not intended to, it could not have such effect. It was a mere recognition of the indisputable fact that the company had no power to displace the Income mortgages. It was not intended to have, and it did not have, any effect upon the order of priority as between Consolidated and Income. After the execution of the Refunding and General mortgage, the priorities as between Consolidated and Income stood as they had stood before, unaffected by the execution of, or the recitation in the Refunding and General mortgage. So standing, it is quite plain that if Consolidated, as is claimed, did consent that the Refunding and General mortgage should rank its own, this consent merely subrogated Refunding and General to Consolidated's position of priority of lien, and to its right to be first satisfied out of funds charged with Consolidated's first and Income's second lien. This consent, dealing not at all with Income's mortgages, but specifically with new liens to be assumed or created by the company, of course, had no effect upon the order of priority as between Consolidated and Income. Income's satisfaction out of property, subject first to Consolidated's and second to its own lien, must wait until Consolidated's lien is satisfied, unless it

could successfully claim, as it has not so far done, that because Refunding has expressly declared that Income's lien is superior to its own, it has thereby subrogated Income to its own subrogated position and that the first funds paid over to Refunding by Consolidated must in turn be paid over by Refunding to it. The fact if it were a fact that Refunding and General had been subrogated to Consolidated's position as prior lienor could not advantage Income by advancing its lien over Consolidated's. The judgment in reversing the order of priority between Income and Consolidated was wrong. It was wrong too in postponing Consolidated to Refunding and General. It is reversed and the cause is remanded for further and not inconsistent proceedings.

Before PARKER, SOPER, and NORTHCOTT, Circuit Judges.