## LIBERTY NAT. BANK & TRUST CO. OF SAVANNAH v. BANKERS TRUST CO. et al.

### In re CENTRAL OF GEORGIA RY. CO.

### No. 11350.

Circuit Court of Appeals, Fifth Circuit.

July 12, 1945.

Francis T. P. Plimpton, of New York City, and R. Basil Morris, of Savannah, Ga., for appellant.

Andrew Oliver, Edward W. Bourne, Sanford H. E. Freund, and A. M. Lewis, all of New York City, T. M. Cunningham, of Savannah, Ga., and W. M. Fulcher, of Augusta, Ga., for appellees.

Before SIBLEY, HUTCHESON, and LEE, Circuit Judges.

HUTCHESON, Circuit Judge.

Another of the many dependent controversies[1] which have arisen in the reorganization proceedings of the Central of Georgia Railway, this one comes up on the neutral[2] petition of debtor's trustee to determine priorities of mortgage liens, if any, on certain coal lands of the debtor acquired in 1905. The real contestants in it are the trustees under six mortgages. Five of these, executed in 1895, the First Mortgage,[3] the Consolidated Mortgage,[4] and the First, Second and Third Preference Income Mortgages,[5] base their claim on after acquired property clauses in their mortgages. The sixth, the General and Refunding Mortgage,[6] of 1919, bases its claim on its granting clause.

---

[1] In re Central of Georgia R. Co., D. C., 48 F.Supp. 445; In re Central of Georgia R. Co., D.C., 56 F.Supp. 10; In re Central of Georgia R. Co., D.C., 58 F.Supp. 807; In re Central of Georgia R. Co., D.C., 58 F.Supp. 816.

[2] In Judge Lovett's picturesque language:

"Debtor's trustee, doubtful as to any lien, impartial as to all, brings this bundle of issues and drops them in the court's lap; and then, folding his tent, like the Arab, silently steals away." 58 F.Supp. at page 810.

[3] This is a first lien on the main line from Atlanta to Savannah and on a small branch, and a second lien (subject to an underlying mortgage) on the stock of the Ocean Steamship Company, which owns and operates the steamship line from Savannah to New York and Boston.

[4] This is a second lien on the main line and its branch and a third lien on the stock of the Savannah steamship line to New York and Boston. It is a first lien on some lines in the western part of the system and a second lien on other lines in the western part.

[5] These are three liens (treated below and here for convenience as one lien) ranking in order after the Consolidated Mortgage on most of the system.

[6] For this mortgage, which applies to substantially all lines of the system, it was claimed below here, as it had been successfully claimed in D.C., 56 F.Supp. 10, and reversed in Bankers Trust Co. v. Callaway, 5 Cir., 148 F.2d 629, that though junior in date, subordination clauses in the Consolidated mortgage gave it priority over that mortgage (but this claim was here denied by the dis-

454

The district judge in an opinion,[7] carefully setting out the facts and as carefully posing and canvassing the contentions of the various trustees, determined: (1) That the Consolidated and the First, Second and Third Preference Income Mortgages, by virtue of their after acquired property clauses, and the Refunding and General Mortgage, by virtue of the granting clause, and in that order of priority, had liens on the coal lands; and (2) that the after acquired property clause of the First Mortgage did not extend to and include the coal lands, and that mortgage had no lien upon them.

The trustee of the First Mortgage, alone appealing, is here insisting that the coal lands are not subject to any of the mortgage liens. In the alternative, it argues that if they are, it is to the several first mortgage liens that they are subject and they must be apportioned among them. The trustee of the Refunding and General Mortgage has filed a short brief simply affirming his faith in the conclusions of the District Judge that the coal lands were subject to the lien of its mortgage and that the first mortgage had no lien thereon. The Preference Income Mortgages have neither filed a brief nor otherwise appeared here.

The appellee, Bankers Trust Co., trustee of the Consolidated Mortgage, as the prior mortgage and therefore most directly benefited by the judgment below, vigorously takes up the cudgels in its defense. As a first line, it moves to dismiss the appeal on the ground that the trustee of the First Mortgage is not a party aggrieved by the order and therefore may not appeal.[8]

On the merits, it insists that the district judge was right for the reasons that he gave in holding that the after acquired property clauses in the Consolidated and Income mortgages and the granting clause in the Refunding mortgage covered the lands and that neither the after acquired property clause of the First Mortgage nor

that of any other of the divisional mortgages did cover them.

Appellant, replying to the first ground of the motion to dismiss, points out that it requested and obtained the permission of the district judge to present its position in its brief and that it did take the positions below which it takes here, and the district judge, in his opinion, did consider and dispose of them. Replying to the second ground, that it is not a person aggrieved because it cannot take any prejudice from the order, it insists that all parties to a reorganization proceeding who are concerned in the plan have a right, without being required to precisely assess the effect on them of particular orders, to appeal from them if they think themselves aggrieved. Further, it furnishes a computation showing the effect in dollars and cents upon it of the order complained of.

On the merits, while appellant does advance here more vigorously and develop more fully than it did below its theory that if the coal lands are subject to any mortgages they are subject jointly to all the first mortgages, it takes substantially the same position as to the insufficiency of the after acquired property clauses in the Consolidated and Income, and the granting clause in the Refunding mortgage to charge the coal lands with a lien, and advances substantially the same arguments and authorities in support which it did below.

█ We deny the motion to dismiss, saying only that the record leaves in no doubt that appellant, as trustee of the First Mortgage and vitally interested in the plan of reorganization, had a right, if not a duty, to take part in the proceedings brought to determine the existence and priority of liens on any of the properties of the debtor, that it did not in any manner waive or abandon that right, and, having failed to prevail below, it had the same right to appeal from any of the orders,

---

trict judge as to the coal lands) and Refunding not appealing, the issues on this claim of priority, have passed out of the case.

[7] 58 F.Supp. 807.

[8] In support of this motion, appellee takes two grounds. The first is that appellant filed no pleading in the court below, and when queried by the court as to whether it claimed a lien on the lands under its first mortgage, gave the answer, "We don't", and that this precluded it

from now either claiming a lien for itself or disputing the lien of appellee. The second is that appellant is in no event a person "aggrieved" by the order because there is no possibility that there will be an unsatisfied claim on the first mortgage, and it is not made to appear how it can make any difference to the holders of the First Mortgage bonds whether the coal lands are subject to the five mortgages or are unmortgaged.

made in those proceedings, which it considered adverse to its interest.

On the merits we agree with appellant's point one, that none of the mortgages cover the coal lands, and that the district judge was wrong in concluding that any of them did. It follows, therefore, that we disagree with appellant's alternative contention that they are subject jointly to all the First mortgages.

The full and detailed statement of the facts in the opinion below, to which we refer, and the presentation and discussion there, of the contentions of the parties as to the meaning and effect of the after acquired property clause in the Consolidated and Income mortgages, and the granting clause in the Refunding mortgage, makes it unnecessary for us to prolong this opinion by restating them. It will suffice for us to supplement the facts[9] a little and to briefly point out wherein the district judge erred.

■ The seat of this error is to be found, we think in the failure of the district judge, in construing the granting clauses of the mortgages in question, to ascertain and give effect to the principal apparent purpose of the parties,[10] to see clearly enough and give adequate weight to the outstanding, the dominant, fact, that what is significant and controlling in the construction of the after acquired property clauses in the five mortgages and the granting clause in the sixth is that all of the mortgages are railway mortgages. The key, therefore, to the intention[11] of the grantor is not the word "all", a word

---

[9] Typical of the granting and after acquired property clauses in all the mortgages, with changes only in the description of the lines covered, is this of the First Mortgage:

"All and singular:

Its entire main line of railroad, now owned and operated by the said Railway Company, in the State of Georgia, * * * together with a branch road extending from the town of Gordon, in Wilkerson County, to the City of Milledgeville, in Baldwin County, being about three hundred and twelve miles in length.

Together with all and singular the franchises, rights and privileges now or hereafter appurtenant to, or used in connection with the main line of railway and branch above mentioned, or any part thereof.

Including any and all roadbed, branches, extensions, superstructure, rights of way, rails, tracks, sidetracks, bridges, viaducts, buildings, depots, stations, warehouses, car-houses, engine-houses, freight-houses, wood-houses, machine and other shops, turn-tables, water-stations, fences, docks, structures, erections and fixtures, and all other things of whatever kind in any wise, now or at any time hereafter belonging or appertaining to such main line of railway or Milledgeville branch, or provided for use thereon, or in connection therewith; and any and all lands designed for depots, warehouses, compresses or other structures at any station or terminus or on or along such described main line of railway and branch line; and any and all locomotives, engines, cars and other rolling stock, equipment, machinery, instruments, tools, implements, materials, supplies, furniture and other chattels now or hereafter acquired or provided for use upon such

main line of railway or branch line; and any and all property, real or personal, of every kind and description, now or hereafter acquired for use upon, or in connection with, or for the purpose of using and operating such main line of railway and branch line; and any and all corporate rights, privileges and franchises which the Railway Company now has, or hereafter can or shall acquire, possess or exercise in, to, upon or in respect of such main line of railway and branch line, necessary for or appertaining to the maintenance or operation of such main line of railway and branch line, or any part thereof and any and all the rents, issues, profits, tolls and other income of such main line of railway and such branch lines;"

[10] Restatement Contracts, Sec. 236; Cocke v. Vacuum Oil Co., 5 Cir., 63 F. 2d 406, 407. In that case it was said:

"* * *, though the 'ordinary meaning of language throughout the country' is the meaning which prima facie interpretation gives to the words of a contract, and their plain meaning may not be distorted to force a desired construction, whenever a word having different shades of meaning is used, that meaning will be given to it which the context in which it is found, the business to which it relates, the circumstances under which it is used, show, in the light of the principal apparent purpose of the parties, that it was intended to have."

[11] Arab Corporation v. Bruce, 5 Cir., 142 F.2d 604, where, citing Gibbs v. Barkley, Tex.Com.App., 242 S.W. 462, Sun Oil Co. v. Burns, 125 Tex. 549, 84 S.W.2d 442, it is said:

"The ultimate purpose in construing a deed is to ascertain the intention of the grantor. (142 F.2d at page 607) * * *

comprehensive enough when unfettered by association,[12] but the words "for use upon" "in connection with", or "for the purpose of", "such lines of railway", and the fact that the enumeration preceding all of the general clauses is of, and only of, lines of railway and branches, and described things constituting a part of railroad lines and normally used in their operation.

As to the after acquired property clauses, when this controlling fact is kept in mind, together with the fact that when the after acquired property clauses were written into the first five mortgages, the mortgagor had no coal lands, and did not acquire any until ten years later, it does not require espousal of the rules of strict and rigid construction,[13] or, indeed, of any rules other than those applicable to the construction of instruments generally to conclude as to each mortgage that the principal apparent purpose of the parties, the intent of the mortgagor, was to grant a railway mortgage on lines of railway and their appurtenances therein described. Such construction, giving full effect to the purpose intended by the parties, avoids, on the one hand, the inconsistencies inherent in fastening the after acquired property clauses of the system mortgages onto the coal lands, while rejecting that result as to the First and others of the mortgages containing identical language, and, on the other, the difficulties inherent in appellant's alternative position that all the first mortgages should be fastened on the coal lands with some kind of apportionment of the lands among all the mortgages.

When it comes to the granting clause in the Refunding mortgage, the failure to depart from the general enumeration contained in the earlier mortgages at least enough to enumerate these coal lands derives added significance from the facts: that among the properties specifically named and enumerated in the granting clause of this mortgage is the Upper Cahaba branch line of railway leading to the coal lands; that the line and the coal lands

by specific enumeration had been subject to a first mortgage in the sum of $600,000; and that, reduced then to $195,000, the Refunding and General mortgage was given subject to it, not, however, on the branch line and the coal lands as the first mortgage had been, but in terms limited to the branch line. It is further significant that at the time the Refunding and General mortgage was given, the coal lands were not being, and had not for many years been, operated by the railroad company but were under lease, the railway having no interest in, or control over, the operation or management, and only an option to purchase from lessor a certain portion of their output. It is true, of course, that their leasing could not take the coal lands out of the earlier mortgages if a lien had once attached, nor could the fact that they were already leased when the Refunding and General mortgage was given prevent the mortgage from covering them if the mortgagor had so intended and so provided. But it is equally true that it is of great significance, in arriving at the intent of the grantor, that at the time the Refunding mortgage was made on the railway properties owned and operated by the mortgagor, it did own these coal lands subject to the lease, and it did not by any kind of enumeration include them in the mortgage.

 The purpose of construction of all instruments is to arrive at the intention of the parties, the purpose of the construction of grants to arrive at the intention of the grantor. Rules for such construction are never ends in themselves but only means, and all must yield to the prime purpose of arriving at the grantor's intention. Construing the mortgages in question with this purpose and end in mind, we think it clear, under the applicable authorities, most of which are cited in the opinion of the trial court, that covered neither by the after acquired property clauses of the earlier mortgages nor the granting clause of the Refunding mortgage, the coal lands

---

The main, the primary, purpose of construction is to arrive at the intent of the grantor as the deed expresses it. This purpose dominates all the rules. To it, except as they aid it, all rules give way, and the true intent ascertained, the quest is over, the search is at an end." (142 F.2d at page 609.)

[12] Smith v. McCullough, 104 U.S. 25, 26 L.Ed. 637; The Three Friends, 166

U.S. at page 60, 17 S.Ct. 495, 41 L.Ed. 897; Cleveland Trust Co. v. Consolidated, 4 Cir., 55 F.2d 211.

[13] 5 Cook on Corporation, 8th Ed. 1923, Sec. 856; United States v. White Sulphur Springs, D.C., 57 F.Supp. 48; Guaranty Trust Co. v. Minneapolis & St. Paul R., D.C., 33 F.2d 512; Morgan v. Donovan, 58 Ala. 241; Guaranty Trust Co. v. Minneapolis, 8 Cir., 36 F.2d 747.

are unmortgaged, that the judgment, should, therefore, be reversed and the cause remanded for further and not inconsistent proceedings.